### The UNITED STATES of America

v.

### Rory BROWN.

### No. 00–CR–55E.

United States District Court, W.D. New York.

Jan. 25, 2001.

---

Denise E. O'Donnell, United States Attorney, Paul J. Campana, Assistant United States Attorney, of counsel, Buffalo, NY, for the government.

Alan S. Hoffman, Buffalo, NY, for defendant.

## ORDER

ELFVIN, District Judge.

The abovenamed individual ("the defendant") was indicted April 5, 2000 for having attempted to enter the United States on or about December 3, 1999 after having earlier been deported from the United States, without first having obtained the consent therefor from the Attorney General of the United States—Count I—and for having, at the time and place of said attempt, made a materially false statement—Count II.

On April 21, 2000 the defendant moved to suppress, in his yet-to-be scheduled trial of such charges, evidence of the charged earlier deportation. Such motion was opposed and was argued to the Hon. Leslie G. Foschio, a Magistrate Judge of this Court, who rendered his Report and Recommendation September 1, 2000. Judge Foschio recommended that the defendant's motion should be denied.

The defendant on October 31, 2000 filed Objections to said Report and Recommendation, the prosecution responded thereto November 27, 2000, the matter was argued to the undersigned December 8, 2000 and the defendant filed on December 12, 2000 an Addendum to his Objections.

The undersigned has given full attention and consideration to said Report and Recommendation—and to the written and oral arguments of counsel and thereupon overrules the defendant's aforesaid objections and now affirms Magistrate Judge Foschio's determination and decision.

IT IS SO **ORDERED.**

## REPORT and RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

### *JURISDICTION*

This case was assigned to the undersigned on June 9, 2000, by the Hon. John T. Elfvin. The matter is currently before the court for Report and Recommendation on Defendant's pretrial motion to suppress, filed April 21, 2000 (Docket Item No. 10).

### *BACKGROUND*

Defendant was charged in a three count indictment dated April 5, 2000, with knowingly and unlawfully attempting to enter the United States, without first receiving permission from the United States Attorney General, in violation of 8 U.S.C. § 1326(a) (Count I), and knowingly and willfully making, in connection with the alleged illegal attempted entry, materially false statements to United States Immigration and Naturalization officials, in violation of 18 U.S.C. § 1001(a)(2) (Counts II and III).

Count I of the Indictment is predicated on Defendant's previous deportation, on March 18, 1998, as an aggravated felon based on a 1990 Virginia conviction for robbery, use of a firearm, and abduction. On April 21, 2000, Defendant filed a mo-

tion to suppress the use of his previous deportation on due process grounds. The motion was accompanied by a Memorandum of Law (Docket Item No. 10) ("Defendant's Memorandum"). In opposition to the motion, the Government filed, on May 5, 2000, its Response to Defendant's Pretrial Motion (Docket Item No. 11) ("Government's Response"), and the affidavit of Agent Joseph Loiselle of the United States Immigration and Naturalization Service ("INS") (Docket Item No. 12) ("Loiselle Affidavit"). On May 18, 2000, Defendant filed the Reply Affidavit of Alan S. Hoffman, Esq. (Docket Item No. 13) ("Hoffman Reply Affidavit"), in further support of his motion to suppress. Further oral argument was also conducted May 18, 2000.

By orders dated June 7 and June 30, 2000, Defendant was granted further time in which to submit additional papers in support of his motion to suppress. Accordingly, Defendant, on July 26, 2000, filed his own affidavit (Docket Item No. 17) ("Defendant's Affidavit"), and the Affidavit of Alan S. Hoffman in Support of Defendant's Motion to Suppress Use of Prior Deportation Proceeding (Docket Item No. 18) ("Hoffman Affidavit"). On July 28, 2000, Defendant filed a Memorandum of Law in Further Support of Suppression (Docket Item No. 19) ("Defendant's Memorandum in Further Support of Suppression").

On August 14, 2000, the Government, in further opposition to Defendant's motion to suppress, filed its Second Response to Defendant's Pretrial Motion (Docket Item No. 20) ("Government's Second Response"), an additional affidavit by Loiselle (Docket Item No. 21) ("Loiselle's Second Affidavit"), and the affidavit of INS Agent Richard L. Merce (Docket Item No. 22) ("Merce Affidavit"). Oral argument was deemed unnecessary.

Based on the following, Defendant's motion to suppress use of his previous deportation should be DENIED.

## FACTS

Defendant, Rory Ephriam Brown ("Brown"), was born in Toronto, Canada on May 14, 1972, and is a Canadian citizen. Defendant's Memorandum at 1; Government's Response at 3; Defendant's A–File, at 22 [1]; and Defendant's Affidavit, ¶ 3. On January 1, 1982, Brown, then nine years old, traveled with his mother, Jacqueline Collington, and her five other children, to the United States, entering as a nonimmigrant visitor at Niagara Falls, New York.[2] Loiselle Affidavit, ¶ 3; Defendant's Affidavit, ¶ 4; Defendant's Memorandum at 1; Government's Response at 3; Defendant's Memorandum in Further Support of Suppression at 7. Brown continued to live in the United States with his family where he attended school. Defendant's Memorandum at 2; Defendant's Affidavit, ¶¶ 4, 7.

In 1988, Collington, applied to change her status in the United States to that of Temporary Resident. Loiselle's Second Affidavit, ¶ 3. Collington indicated in her application that she was also seeking to adjust the status of the oldest three of her six children, but not the youngest three, one of whom was Brown. Loiselle's Second Affidavit, ¶ 3; Collington's A–File at 20.[3] Collington became a temporary resident of the United States when her application was granted on May 3,

---

**1.** References to "Defendant's A–File" are to the pages of Brown's "A–File" which the Government describes as the official record of the INS containing the documentation pertinent to the alien's immigration history and status. Brown's A–File is attached as Exhibit A to the Loiselle Affidavit.

**2.** The parties agree that various references in the record to Brown having first entered the

United States on January 1, 1989, see, e.g., Loiselle Affidavit, ¶ 3; Merce Affidavit, Exhibits B and E, are typographical errors. Merce Affidavit, ¶ 13.D; Defendant's Affidavit, ¶ 12; Government's Second Response at 4, n. 1.

**3.** A copy of Collington's A–File ("Collington's A–File"), is attached to Loiselle's Second Affidavit.

1988. Defendant's Memorandum in Further Support of Suppression at 9.

In 1989, Collington applied to have her status adjusted from temporary to permanent resident. Loiselle's Second Affidavit, ¶ 4; Hoffman Reply Affidavit, ¶ 5. That application was granted on November 3, 1989. *Id.* As the child of a lawful permanent resident, Brown, age 17, was then eligible to apply for permanent residency in the United States, *id,* although he never did.

In 1989, Brown was arrested in Virginia in connection with an armed robbery, for which he was convicted, in 1990, of robbery, use of a firearm, and abduction. Brown was sentenced to a term of incarceration of 30 years.[4] Government's Response at 4, 11; Government's Second Response at 2. It is undisputed that the crimes for which Brown was convicted qualify as "aggravated felony" offenses under § 101(a)(43) of the Immigration and Nationality Act ("the INA" or "the Act"), 8 U.S.C. § 1101(a)(43). Loiselle Affidavit, ¶ 4.

Collington became a naturalized United States citizen on August 30, 1996. Defendant's Memorandum at 12; Loiselle's Second Affidavit, ¶ 5. The Government maintains, and Brown does not dispute, that Collington's changes in her residency status had no effect on Brown's immigration status. Loiselle's Second Affidavit, ¶ 6; See Defendant's Memorandum in Further Support of Suppression at 8. Rather, neither Brown, nor anyone else acting on his behalf, ever filed an application or petition to adjust Brown's immigration status in the United States from the non-immigrant visitor status assigned when he first entered the United States on January 1, 1982, *Id.,* ¶¶ 6–7, which had long since expired. Merce Affidavit, Exhibit B.

On December 18, 1997, Brown, who remained incarcerated in Virginia based on his 1990 Virginia conviction, was granted parole, although Brown was, apparently, not informed of this fact at that time. Defendant's Affidavit, ¶ 9. On January 14, 1998, deportation proceedings under 8 U.S.C. § 1229a were initiated against Brown when INS Special Agent Richard L. Merce ("Agent Merce"), arrested Brown at Nottoway Correctional Facility in Virginia, and served him with a Notice of Rights and Request for Disposition Form I–826 ("Form I–826"). Merce Affidavit, Exhibit D. Form I–826 advised Brown that he was entitled to a hearing before an Immigration Judge ("IJ"), and that Brown would be provided, upon his request, with a list of organizations that would provide legal representation to Brown at little or no cost to him.[5] Merce Affidavit, ¶¶ 1, 3 and Exhibit A.

Based on his January 14, 1998 interview of Brown, Agent Merce learned that Brown's mother became a naturalized United States citizen in 1996, and had become a lawful permanent resident in 1989, causing Merce to initially believe that Brown may have some lawful status in the United States. Defendant's Memorandum at 9; Defendant's Affidavit, ¶ 11; Merce Affidavit, ¶ 5. Brown maintains he advised Merce that he was seeking advice as to how he could remain in the United States with his family. Defendant's Affidavit, ¶ 11. According to Brown, Agent Merce advised him that if Brown agreed to everything presented by the INS, Brown would be paroled to the INS and could seek permission to remain in the United States, and that Brown relied on such statements in complying with subsequent requests by the INS agents. Defendant's Affidavit, ¶ 11. Although the Notice of Rights included a box labeled "REQUEST

---

4. Brown's term of incarceration appears in other parts of the record as 40 years. Government's Second Response at 6–7; Merce Affidavit, Exhibits B and E. Although this discrepancy is not explained, it is not material to the issues presented.

5. A copy of said Notice of Rights is attached as Exhibit A to the Merce Affidavit.

FOR DISPOSITION" in which Brown could request a hearing before an IJ to determine whether Brown could remain in the United States, Brown did not select that option, nor either of the other two options listed. *Id.*, ¶ 3; Merce Affidavit, Exhibit A. Rather, Brown simply signed the form. *Id.* Brown does not claim he is unable to speak or read English.

On January 23, 1998, Agent Merce served Brown with a Notice to Appear, INS Form I–862 ("Form I–862"), signed by the Norfolk, Virginia INS Officer in Charge, William W. Bittner ("Agent Bittner"). Merce Affidavit, ¶ 4 and Exhibit B. Form I–862 indicated that an appearance before an IJ would be set at a date and time to be determined, that Brown was entitled to seek legal representation in connection with the removal proceedings, and also provided Brown with an opportunity to expedite the INS's determination of his case by requesting an immediate hearing, thereby waiving his right to a 10–day period prior to appearing before an IJ. *Id.* Form I–862 also indicated that attached to the form was a list of organizations and attorneys which provided free legal services. *Id.* Agent Merce also served Brown with a Warrant for Arrest of Alien, INS Form I–200 ("Form I–200"), dated January 23, 1998. Merce Affidavit, ¶ 4 and Exhibit C.

Agent Merce subsequently determined that Collington's naturalization had no effect on Brown's status in the United States, and that "Brown's status was simply that of a nonimmigrant visitor who had overstayed the time that he could remain lawfully in the United States." Merce Affidavit, ¶ 6. As such, Merce concluded, based on Brown's Virginia conviction, that Brown qualified for expedited administrative deportation under 8 U.S.C. § 1227(a)(2)(A)(iii) and 8 U.S.C. § 1228 which governs expedited deportation proceedings of aliens convicted of aggravated felony offenses. Merce Affidavit, ¶ 6. Accordingly, Merce terminated the deportation proceedings commenced under 8

U.S.C. § 1229a, and commenced expedited administrative deportation proceedings. *Id.*, ¶¶ 5, 6. The Government asserts that the new administrative proceedings superseded and replaced the previous proceedings. *Id.*, ¶ 6. Brown maintains that by this procedure, the administrative proceeding commenced pursuant to INA § 240, 8 U.S.C. § 1229a was improperly converted into an expedited removal action pursuant to INA § 238, 8 U.S.C. § 1228(b). Defendant's Memorandum at 8.

A Notice of Intent to Issue a Final Administrative Removal Order, INS Form I–851 ("Form I–851"), was prepared and signed on February 17, 1998, by Michael J. Eigner, the Assistant Officer in Charge in Norfolk, Virginia. Merce Affidavit, ¶ 8 and Exhibit E. Form I–851 pertained to the expedited removal proceedings and advised Brown that he was deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) based on his 1990 conviction in Virginia for robbery, use of a weapon and abduction, which qualified Brown as an aggravated felon under 8 U.S.C. 1101(a)(43). *Id.* Merce maintains he personally served Brown with Form I–851 on February 17, 1998 at 9:55 A.M. *Id.*; Merce Affidavit, Exhibit E. Unlike Form I–862, Discussion, *supra*, at 6, a part of a non-expedited deportation proceedings, Form I–851 does not advise a prospective deportee of any right to a hearing before an IJ. Rather, Form I–851 informed Brown that the INS intended to issue a Final Administrative Removal Order Form I–851A ("Form I–851A"), without holding a hearing before an IJ. Defendant's Memorandum at 8–9.

Brown maintains that on February 17, 1998, Agent Merce advised that Brown would not be paroled on his state convictions unless Brown agreed to a voluntary departure. Defendant's Affidavit, ¶ 13. Brown, however, claims he replied that he wished to remain in the United States with his mother and siblings, but that he would agree to a voluntary departure from the United States so as to remain eligible to return to the United States after being

paroled. *Id.* According to Brown, Agent Merce then informed him that he would only be allowed to voluntarily depart if Brown agreed not to challenge the deportation, that an order had already been signed directing Brown's removal from the United States to Canada, and that Brown was never informed that he needed permission to reenter the United States following deportation. *Id.* Brown further maintains that he was deprived of his right to consult with an attorney regarding his deportation by the INS agents who failed to provide him with a list of legal agencies and attorneys he could contact without cost, and told Brown that hiring an attorney would be futile as Defendant was not eligible for any relief from deportation. *Id.,* ¶ 16.

Brown completed Form I–851 on February 17, 1998 at 10:00 A.M. Merce Affidavit, Exhibit E. Specifically, Form I–851 contains two boxes, the first labeled "I WISH TO CONTEST," and the second labeled "I DO NOT WISH TO CONTEST." *Id.* The form also provides an alien with four separately enumerated reasons on which he may base his decision to contest the expedited deportation by checking the appropriate box next to each, none of which were selected by Brown. *Id.* Rather, Brown indicated he did not wish to contest the impending issuance of a final administrative removal order, checking the two boxes within the second box. *Id.* By checking those boxes, Brown admitted the allegations contained in the Notice of Intent, admitted he was deportable and acknowledged he was ineligible for any form of relief from removal. *Id.* Brown waived his right to rebut and contest the charges contained in the I–851 form and to petition for a review of the Final Administrative Removal Order as to his eligibility for an expedited administrative deportation. *Id.* Brown also waived the 14 day period to delay execution of the Final Administrative Removal Order. *Id. See* 8 U.S.C. § 1228(b)(3) (authorizing judicial review); *but see* 8 U.S.C. § 1252(a)(2)(C) (excluding judicial review for final deportation orders

affecting aggravated felons). The space provided for Brown to indicate to which country he wished to be deported was, however, not completed. *Id.*

At 10:05 A.M. on February 17, 1998, Brown was served with the Final Administrative Removal Order. Merce Affidavit, Exhibit D. The form indicates that Brown waived his right to petition for a review of such deportation proceedings. *Id.* According to Brown, he did not oppose deportation because he relied on erroneous advice from the INS agents that he was ineligible for any relief or waiver of removal by reason of his aggravated felony conviction. Defendant's Memorandum at 9.

On February 18, 1998, Brown was first informed he had been granted parole on December 18, 1997. On that same date, Brown was released on parole from the Virginia Department of Corrections to the INS pursuant to a detainer lodged by the INS against Brown, Defendant's Memorandum at 11. Merce Affidavit, ¶ 7. Brown was physically deported from the United States on March 18, 1998, aboard an Air Canada flight to Canada. Government's Response at 7 (citing Exhibit A at 4). Brown admits that he was not, at the time of his deportation, lawfully admitted as a permanent resident of the United States. Defendant's Memorandum in Further Support of Suppression at 8.

On December 3, 1999, Brown was arrested at the Rainbow Bridge in Niagara Falls, New York following his attempt to reenter the United States from Canada. In particular, Brown's arrest was based on his failure to obtain permission from the Attorney General before reentry to this country, permission which was required based on his March 18, 1998 deportation as an aggravated felon.

## DISCUSSION

Brown moves to suppress use of the INS administrative deportation order (Form I–851A), dated February 11, 1998, as issued by Agent Bittner, thereby chal-

lenging use of his March 18, 1998 deportation as evidence of a violation of 8 U.S.C. § 1326(a). Brown maintains that the administrative procedure pursuant to which he was deported on March 18, 1998, was procedurally defective as the INS illegally converted the original administrative deportation proceedings under 8 U.S.C. § 1229a into expedited administrative deportation proceedings under 8 U.S.C. §§ 1227–1228, and thereby deprived him of his right to a hearing before an IJ who would have advised Brown that, based on the fact that his mother was then a naturalized citizen, he was entitled to seek a change in his status that would permit him to remain in the United States, his home since entering this country in 1982 at age nine, and falsely advised Brown that any challenge to the proceedings would be futile. According to Brown, such errors rendered his deportation proceedings a violation of his due process rights, thereby prohibiting use of the deportation to establish an element of Count I of the Indictment charging Brown with violating 8 U.S.C. § 1326(a) as a deportee who failed to obtain prior permission to reenter. In opposition, the Government argues Brown's 1998 deportation procedures did not violate Brown's due process rights and that, in any event, Brown has not demonstrated the requisite degree of prejudice necessary to succeed on his motion.

As relevant to 8 U.S.C. § 1326(a), a prior deportation need not "have been 'lawful' to support a conviction for illegal reentry." *United States v. Paredes–Batista*, 140 F.3d 367, 376 (2d Cir.) (citing 8 U.S.C. § 1326(a), and *United States v. Mendoza–Lopez*, 481 U.S. 828, 834–35 & n. 9, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987)), *cert. denied*, 525 U.S. 859, 119 S.Ct. 143, 142 L.Ed.2d 116 (1998). "The Supreme Court has held ... that due process dictates that a disposition in a deportation hearing may not be used 'to establish conclusively an element of a criminal offense' unless it is, at some point, subject to judicial review." *Paredes–Batista, su-*

*pra*, at 376 (quoting *Mendoza–Lopez, supra*, at 838, 107 S.Ct. 2148). As such, if defects in a challenged deportation proceeding were so serious that they "effectively eliminated that right of the alien to obtain [direct] judicial review," that deportation proceeding may be collaterally attacked in any subsequent proceeding in which the deportation must be established as an element of the charged criminal offense, including a trial under 8 U.S.C. § 1326. *Mendoza–Lopez, supra*, at 838–39, 107 S.Ct. 2148. However, even if the court finds, upon collateral review, that the expedited administrative deportation proceedings did not fully comport with due process requirements applicable to such proceedings, relief is not available unless the alien also demonstrates prejudice, *i.e.*, some grounds on which he could have successfully challenged an IJ's determination, assuming one had been made, that the alien was deportable. *Paredes–Batista, supra*, at 378.

The gravamen of Brown's attack on his expedited administrative deportation is that he was denied due process because he was denied an opportunity to appear before an IJ who, Brown asserts, would have determined that Brown was eligible for relief from deportation based upon his mother's naturalization in August 1996. However, the record indicates that Brown was not denied due process with regard to his expedited administrative deportation as defined by the Supreme Court. Further, even if such deportation proceedings did not fully comport with all due process requirements, Brown has not, and cannot, establish that he was prejudiced by such deficiencies as required to sustain a collateral attack on a prior deportation.

### 1. *Due Process*

Aliens who unlawfully enter the United States are entitle to protection under the Fifth Amendment Due Process clause. *United States v. Benitez–Villafuerte*, 186 F.3d 651, 656 (5th Cir.1999) (citing cases), *cert. denied*, 528 U.S. 1097,

120 S.Ct. 838, 145 L.Ed.2d 704 (2000). The Fifth Amendment Due Process clause forbids the Government from arbitrarily taking aliens into custody and deporting them without affording them the opportunity to be heard. *Benitez–Villafuerte, supra,* at 656 (citing *Yamataya v. Fisher,* 189 U.S. 86, 101, 23 S.Ct. 611, 47 L.Ed. 721 (1903)). Whether an alien has been given "constitutionally sufficient" due process depends on the alien's particular circumstances, *Landon v. Plasencia,* 459 U.S. 21, 33, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982), but generally "includes the right to a hearing before an immigration judge prior to deportation." *Benitez–Villafuerte, supra,* at 656–57.

■ A deportation proceeding is, however, a civil, rather than a criminal, action. *Paredes–Batista, supra,* at 377. Accordingly, "the full range of constitutional protections available to a defendant in a criminal case are not afforded an alien in a deportation proceeding." *Benitez–Villafuerte, supra,* at 657 (citing cases); *see also Paredes–Batista, supra,* at 377 (holding alien for whom deportation was sought was not guaranteed assistance of counsel, although he was entitled to be represented at his own expense if he so desired).

■ The only due process required with regard to alien deportation proceedings is that the alien be given notice of the charges against him and provided with a fair opportunity to be heard on those charges. *Benitez–Villafuerte, supra,* at 657 (citing *Kwong Hai Chew v. Colding,* 344 U.S. 590, 597–98, 73 S.Ct. 472, 97 L.Ed. 576 (1953)). Further, in reviewing deportation proceedings, the role of the courts " 'is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy.' " *Benitez–Villafuerte, supra,* at 657 (quoting *Carlson v. Landon,* 342 U.S. 524, 537, 72 S.Ct. 525, 96 L.Ed. 547 (1952)). The court thus considers whether the expedited administrative de-

portation procedures under 8 U.S.C. § 1228, as applied to Brown, afforded Brown the requisite opportunity to claim all the due process protection to which he was constitutionally entitled.

In an expedited administrative deportation proceeding,

(A) the alien is given reasonable notice of the charges and of the opportunity described in subparagraph (C);

(B) the alien shall have the privilege of being represented (at no expense to the government) by such counsel, authorized to practice in such proceedings, as the alien shall choose;

(C) the alien has a reasonable opportunity to inspect the evidence and rebut the charges;

(D) a determination is made for the record that the individual upon whom the notice for the proceeding under this section is served (either in person or by mail) is, in fact, the alien named in such notice;

(E) a record is maintained for judicial review; and

(F) the final order of removal is not adjudicated by the same person who issues the charges.

8 U.S.C. § 1228(b)(4); *see also* 8 C.F.R. § 238.1.

Further, any final order of removal may not be executed "until 14 calendar days have passed from the date that such order was issued, unless waived by the alien," to permit the alien an opportunity to apply for judicial review under 8 U.S.C. § 1252. 8 U.S.C. § 1228(b)(3). This scheme for expedited statutory deportation has been held to comport with the minimum due process requirement as defined by the Supreme Court in *Kwong Hai Chew, supra. Benitez–Villafuerte, supra,* at 657–58. As such, so long as the INS complied with the expedited deportation statutory scheme as provided in 8 U.S.C. § 1228(b)(4) when deporting Brown on March 18, 1998, the expedited deportation proceeding afforded

Brown all requisite due process and is admissible as conclusive evidence of the prior deportation to establish that element of the pending violation of 8 U.S.C. § 1326(a) charged in Count I of the Indictment. *Compare Mendoza–Lopez, supra,* at 840, 107 S.Ct. 2148 (observing that the government may not rely on a prior deportation order to establish an element of a crime, including a violation of 8 U.S.C. § 1326(a), if an alien's waiver of his right to appeal a deportation proceeding was neither considered nor intelligent).

Brown, however, argues that 8 U.S.C. § 1252(a)(2)(C) precludes the judicial review provided for under 8 U.S.C. § 1228(b)(3) where the final order of removal is against an alien who "is removable by reason of having committed a criminal offense covered" under, *inter alia,* 1227(a)(2)(A)(iii). Defendant's Memorandum at 5–6. The court's reading of the relevant statutes demonstrates the statutes operate inconsistently as § 1228(b)(3), by its terms, pertains only to the expedited removal of aliens convicted of aggravated felonies, and provides that such an alien must be given 14 days within which to apply for judicial review pursuant to 8 U.S.C. § 1252(a)(2)(C); however, § 1252(a)(2)(C) expressly prohibits judicial review of final removal orders in the case of aggravated felons. Regardless of such apparent inconsistency, the relevant regulations nevertheless provided Brown with an opportunity to seek an administrative hearing before an IJ, prior to the execution of the final deportation order, provided he raised a genuine issue of material fact challenging the preliminary findings set forth in the Notice of Intent to Issue a Final Administrative Removal Order. 8 C.R.F. § 238.1(c) and (d).

Specifically, under 8 C.F.R. § 238.1(c), upon being served with the Notice of Intent, an alien is entitled to respond to the charges by submitting a written rebuttal, and to review the INS's evidence supporting the charge. 8 C.F.R. § 238.1(c)(1) and (2). If a timely rebuttal

raises a genuine issue of material fact regarding the preliminary findings, the deciding [INS] officer may either obtain additional evidence from any source, including the alien, or cause to be issued a notice to appear to initiate removal proceedings under section 240 of the Act.

8 C.F.R. § 238.1(d)(2)(ii)(A). If additional evidence demonstrates

the alien is not amenable to removal under section 238 of the Act, the deciding [INS] officer shall terminate the expedited proceedings under section 238 of the Act and shall, where appropriate, cause to be issued a notice to appear for the purpose of initiating removal proceedings before an immigration judge under section 240 of the Act.

8 C.F.R. § 238.1(d)(2)(iii).

Judicial review of a final order of removal pursuant to § 240 of the Act is permitted under 28 U.S.C. § 2341 *et seq.,* which governs review of orders issued by federal agencies, except as provided under § 1252, which governs some procedural aspects of judicial review of final removal orders. 8 U.S.C. § 1252(a)(1). Before judicial review may be held, however, the alien must exhaust his administrative remedies with regard to the final removal order issued by the IJ, which requires the alien to appeal the immigration judge's decision to the Board of Immigration Appeals ("BIA"). 8 C.F.R. §§ 3.38, 240.15. Assuming the BIA upholds the IJ's final removal order, the BIA's ruling is directly appealable to the court of appeals located in the circuit in which the order issued. 8 U.S.C. § 1252(b)(2).

Accordingly, the removal scheme pursuant to which Brown was deported provided for a hearing before an IJ if Brown, in a written rebuttal submitted in response to the removal charge, raised a genuine issue of material fact challenging the INS's preliminary findings sufficient to cause the INS to convert the expedited administrative removal proceedings into removal proceedings under § 240 of the Act, which

provides for a hearing before an IJ, and an opportunity for subsequent direct judicial review. The fact that in this case, Brown, an aggravated felon, did not avail himself of the procedure by which judicial review could have been obtained does not mean he did not receive all the process which he was due.

█ In the instant case, the record demonstrates that Brown was given notice of the charges against him when Agent Merce served Brown on January 23, 1998, with a Notice to Appear, Form I–862. That notice, by its terms, advised Brown that he was deportable because Brown was not a United States citizen, was a native and citizen of Canada, was admitted to the United States on January 1, 1982 as a nonimmigrant visitor with authorization to remain for a temporary period not to exceed June 20, 1990, and had been convicted of four violent felony offenses on December 19, 1990. Merce Affidavit, Exhibit B. The notice further indicated that Brown was entitled to a hearing on the charges before an IJ and that he could, if he so chose, retain legal representation at his own expense. *Id.* According to the notice, a list of organizations and attorneys providing free legal services was attached. *Id.*

After serving Brown with the Notice to Appear, Agent Merce discovered that Brown had derived no change in his status based on his mother's naturalization. Accordingly, on February 17, 1998, Merce served Brown with a Notice of Intent to Issue a Final Administrative Removal Order, Form I–851, thereby commencing expedited administrative removal proceedings pursuant to 8 U.S.C. § 1228. Merce Affidavit, ¶ 8 and Exhibit E. Form I–851, similar to Form I–862, also advised Brown that he had the right to retain legal counsel with regard to the expedited administrative deportation proceedings and, if Brown were unable to afford such representation, he could contact an attorney from a list of available free legal services that was provided to him. Merce Exhibit

E. Brown signed form I–851 in the space that indicated he did not wish to contest the deportation proceedings, *id.*, thereby waiving his right to rebut the charges and the opportunity to have the expedited administrative deportation proceedings converted into removal proceedings under § 240 of the Act. Agent Merce then served Brown with the Final Administrative Removal Order, Form I–851A, thereby finding Brown was deportable as an alien who had been convicted of an aggravated felony offense and who was ineligible for any relief from deportation that the Attorney General could grant in the exercise of discretion. Merce Exhibit E. The court accordingly finds that this record of events provided Brown with all requisite due process protection applicable under the Fifth Amendment. 8 C.F.R. § 238.1; *See Benitez–Villafuerte, supra,* at 658.

Brown further claims that a number of actions by the INS agents rendered his waiver of his right to an administrative hearing void as not made knowingly and intelligently. *See Mendoza–Lopez, supra,* at 839–40, 107 S.Ct. 2148. Specifically, Brown maintains that although he acknowledges to having been read some of the stated rights on January 14 and February 17, 1998 in connection with his deportation proceedings, the hearing before the IJ which, according to Form I–862 was to be scheduled, never occurred. Defendant's Affidavit, ¶ 12. Brown also maintains that he never waived his right to such hearing but, rather, was prevented from attending such hearing when the final expedited administrative deportation order was issued without any hearing ever having been held. Defendant's Affidavit, ¶ 15. This argument fails as the record demonstrates that once Agent Merce ascertained that Brown's mother's naturalization had no effect on Brown's alien status in the United States, the initial deportation proceedings commenced against Brown under 8 U.S.C. § 1229a, which entitled Brown to a hearing before an IJ, were terminated and expedited administrative proceedings,

for which Brown waived his right to an IJ hearing, were commenced. Merce Affidavit, ¶¶ 5 and 6.

Notwithstanding, Brown contends that the initial deportation proceedings, commenced pursuant to 8 U.S.C. § 1229a, could not be terminated absent the express order of an IJ, none of which appears in Brown's A–File. Defendant's Memorandum in Further Support of Suppression at 20 (citing 8 C.F.R. § 238.1). In support of this argument, Brown relies on 8 C.F.R. § 238.1 which provides, in relevant part, that

> In any proceeding commenced under section 240 of the Act which is based on deportability under section 237 of the Act, if it appears that the respondent alien is subject to removal pursuant to section 238 of the Act, the immigration judge may, upon the Service's request, terminate the case and, upon such termination, the Service may commence administrative proceedings under section 238 of the Act. However, in the absence of any such request, the immigration judge shall complete the proceeding commenced under section 240 of the Act.

8 C.F.R. § 238.1(e).

■ However, a plain reading of the above regulation demonstrates no requirement that an IJ issue an express order stating that deportation proceedings commenced under 8 U.S.C. § 1229a have been terminated and superseded by expedited administrative deportation proceedings under 8 U.S.C. § 1228. Moreover, "[t]here is no presumption or general rule that for every duty imposed upon the court or the Government and its prosecutors there must exist some corollary punitive sanction for departures or omissions, even if negligent." *United States v. Montalvo-Murillo*, 495 U.S. 711, 717, 110 S.Ct. 2072, 109 L.Ed.2d 720 (1990) (holding, in the context of a technical violation of the Bail Reform Act ("the Act"), that noncompliance with the Act's timely hearing requirement was harmless error that did not entitle the arrestee to release as a sanction for the delay, and citing *French v. Edwards*, 80 U.S. 506, 13 Wall. 506, 511, 20 L.Ed. 702 (1871) ("[M]any statutory requisitions intended for the guide of officers in the conduct of business devolved upon them ... do not limit their power or render its exercise in disregard of the requisitions ineffectual.")).

■ It follows that even if the INS violated a procedural provision for terminating a deportation proceeding commenced under § 1229a, in favor of commencing an expedited administrative proceeding under §§ 1227 and 1228, such violation alone is insufficient to render Brown's previous deportation inadmissible as evidence of a § 1326(a) violation. Specifically, Brown must also establish that such violation rendered his deportation proceedings so fundamentally unfair that, but for the error, he would not have been deported. *Benitez–Villafuerte, supra,* at 651 (citing cases). As discussed below, *see* Discussion, *infra,* at 23–30, Brown has not met this burden.

■ Brown's assertion he was never advised of his right to contact an attorney and was not provided with a list of attorneys who could represent him at little or no cost with regard to his expedited administrative deportation proceedings, Defendant's Affidavit, ¶¶ 16, fails to establish a denial of due process. In support of his argument, Brown relies on *Montilla v. INS*, 926 F.2d 162 (2d Cir.1991), in which an IJ had failed to comply with INS regulations requiring that the IJ, after informing the alien of his right to seek counsel at no expense to the government, must require the alien to state on the record at the commencement of a deportation hearing, whether such representation was desired. *Montilla, supra,* at 166. The court found that the alien, who had previously indicated to the IJ that he was confused as to whether he should retain counsel, demonstrated his complete ignorance on the subject when he failed to respond to the judge's sole inquiry at the deportation

hearing as to whether the alien was waiving his right to representation. *Id.* at 169. The court held that under the circumstances, the alien was not required to establish prejudice as a result of his inadvertent waiver of counsel, and remanded the matter to the IJ for a new hearing. *Id.* at 170.

The Second Circuit later clarified that *Montilla* did not create an "absolute 'no prejudice' standard" whenever an alien challenges a deportation proceeding on the basis that the INS failed to comply with its own regulations. *Waldron v. INS,* 17 F.3d 511, 517 (2d Cir.1993) (holding regulation requiring detained alien be given notice of privilege to contact diplomatic consular authorities of his country did not contravene fundamental constitutional or statutory rights and, as such, alien was required to demonstrate prejudice to avoid deportation). In particular, the court stated

> We believe that the reasons articulated by the Montilla Court for adopting a 'no prejudice' standard are particularly important where fundamental rights derived from the Constitution or federal statutes are implicated, such as the right to counsel. However, we believe that when there is a regulation which relates to less fundamental agency-created rights and privileges, the wholesale remand of cases, where no prejudice had been shown to result from the INS's failure to strictly adhere to its regulations, would place an unwarranted and potentially unworkable burden on the agency's adjudication of immigration cases.

*Waldron, supra,* at 518 (citing *Montilla, supra,* at 169).

As discussed, as a deportation proceeding is a civil matter, Brown is not entitled to the full array of rights required to comport with constitutional requirements in a criminal proceeding, including the Sixth Amendment right to effective assistance of counsel. *Paredes–Batista, supra,* at 377. Nor does 8 C.F.R. § 238 .1(b)(2)(iv), which required the INS to pro-

vide Brown with a list of attorneys and legal services programs that could represent him at little or no cost, qualify as a "fundamental right derived from the Constitution or federal statutes" such that Brown's Fifth Amendment right to due process was violated by the INS's alleged failure to comply with that regulation. Rather, such "right" derives from a provision of 8 U.S.C. § 1228, which requires that with regard to the expedited removal of an alien convicted of an aggravated felony, "[t]he Attorney General shall provide that . . . (B) the alien shall have the *privilege* of being represented (at no expense to the government) by such counsel, authorized to practice in such proceedings, as the alien shall choose." 8 U.S.C. § 1228(b)(4)(B) (emphasis added). That Congress saw fit to enact legislation referring to an alien's *privilege* of retaining counsel emphasizes the fact that the alien has no fundamental right, under either the Constitution or federal statutes, to representation. The fundamental right an alien derives from 8 U.S.C. § 1228(b)(4)(B) and 8 C.F.R. § 238.1(b)(2)(iv) is limited to the right to be informed that he may retain counsel to represent him in the proceeding. Significantly, that was the alleged violation before the court in *Montilla, supra,* at 169.

Further, unlike *Montilla, supra,* in the instant case, Brown never indicated that he was unaware of his right to seek representation. In particular, Brown does not claim that he did not, or could not, read either Forms I–862 or I–851, both which advised him of his right to seek legal representation on his own, and that a list of attorneys and legal services that could represent him at little or no cost was available. Merce Affidavit, Exhibits B and E. Brown's allegation that at his January 14, 1998 meeting with Agent Merce, Brown advised Merce of his intention to seek advice as to how he could remain in the United States with his family, Defendant's Affidavit, ¶ 11, indicates that Brown believed he needed legal assistance to deter-

mine whether it was possible for him to remain in the United States upon being released from prison. On this record the court finds that, even if true, the INS's failure to provide Brown with a list of attorneys and legal services agencies did not deny Brown of due process as Brown was not constitutionally guaranteed any right to counsel with regard to such proceeding, and the relevant regulation does not relate to a statutorily created right.

Brown also asserts that the expedited removal proceedings to which he was subjected violated the express requirement of 8 U.S.C. § 1228(b)(4)(F) which provides that the final order of removal may not be adjudicated by the same person who issues the charges. Defendant's Memorandum in Further Support of Suppression at 20–21. According to Brown, the Final Order of Removal was executed on February 11, 1998, by Agent Bittner who also issued the Notice to Appear on January 23, 1998. *Id.* A review of these documents reveals that such is the case. *See* Defendant's A–File at 5, 11. Moreover, that Bittner both issued the Notice to Appear and executed the Final Order of Removal does not constitute a technical violation of 8 U.S.C. § 1228(b)(4)(F). In particular, with regard to removal proceedings under § 238(b) of the Act, "[t]he Notice of Intent shall constitute the charging document." 8 C.F.R. § 238.1(b)(2)(I). In the instant case, the Notice of Intent to Issue a Final Administrative Removal Order, INS Form I–851 ("Form I–851"), was prepared and signed on February 17, 1998, by Michael J. Eigner, the Assistant Officer in Charge in Norfolk, Virginia. Merce Affidavit, ¶ 8 and Exhibit E. The final order of removal thus was not adjudicated by the same person who issued the charges and 8 U.S.C. § 1228(b)(4)(F) was not violated. Accordingly, the court need not consider whether, if the same person did sign both the charging instrument and removal order, a fundamental due process violation thereby arose.

On this record, the court finds that Brown was afforded all requisite Fifth Amendment due process protection in connection with the expedited administrative deportation proceedings that resulted in his deportation on March 18, 1998 based on his undisputed status as an aggravated felon.

### 2. *Prejudice*

 Even if Brown's prior deportation proceedings did deny him of his right to directly appeal that decision, thereby permitting Brown to predicate his attack on the proceeding, such attack nevertheless fails as Brown has not established that he was prejudiced based on defects in the expedited administrative deportation proceeding, *i.e.*, that such proceedings were so "fundamentally unfair" that Brown would have been entitled to relief on direct appeal. *See Paredes–Batista, supra,* at 378 (citing *United States v. Fares,* 978 F.2d 52, 57 (2d Cir.1992)). "To succeed in a collateral attack, [Brown] would have to show that he was prejudiced by the deprivation of his right of direct appeal—that is, he would have to show that 'a fully informed exercise of the right of direct appeal would have yielded [him] ... relief from deportation.' " *Paredes–Batista, supra,* at 378 (quoting *Fares, supra,* at 56). Toward this end, Brown makes no showing of the requisite prejudice as he raises no grounds on which, had he appealed directly, he could have successfully contested the determination that he was deportable by reason of his Virginia felony convictions.

Brown argues that had the original deportation proceedings, commenced pursuant to 8 U.S.C. § 1229a, not been terminated and replaced with the expedited administrative deportation proceedings conducted pursuant to 8 U.S.C. § 1228, he would have appeared at an administrative hearing held before an IJ who would have noted that Brown was entitled to relief from deportation on the basis that his mother's naturalization in August 1996 rendered Brown eligible to

seek a change in status that, in turn, would have permitted him to remain in the United States. Thus, Brown contends, his waiver of the IJ hearing was invalid as he was erroneously informed by the INS agents that such a request was futile. Defendant's Affidavit, ¶¶ 11–15. However, the relevant statutes and regulations demonstrate otherwise.

Under § 237 of the Act, "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). Aggravated felons are, for purposes of § 1227(a)(2)(A)(iii), defined under 8 U.S.C. § 1101(a)(43), and it is not disputed that Brown's 1990 conviction in Virginia qualify him as an aggravated felon for purpose of 8 U.S.C. § 1227(a)(2)(A)(iii). Further, if the Attorney General determines that an alien is deportable under 8 U.S.C. § 1227(a)(2)(A)(iii), based on conviction of an aggravated felony, the Attorney General may issue an expedited removal order pursuant to 8 U.S.C. § 1228(b)(1), as was done in Brown's case. Expedited removal under 8 U.S.C. § 1228(b) does not apply to aliens admitted for permanent residence when the proceedings under that section were commenced. 8 U.S.C. § 1228(b)(2)(A). Brown admits that he was not lawfully admitted to the United States as a permanent resident at the time of his deportation on March 18, 1998. Defendant's Memorandum in Further Support of Suppression at 8. Further, an alien convicted of an aggravated felony "shall be conclusively presumed to be deportable from the United States." 8 U.S.C. § 1228(c). Brown was thus deportable because he was an aggravated felon who was not admitted as a permanent resident when deportation proceedings were commenced. 8 U.S.C. § 1228(b) and (c).

■ Brown nevertheless maintains that he was, as of the commencement of the expedited administrative deportation proceedings on February 17, 1998, entitled to a waiver of inadmissibility and an adjustment of his status from that of a non-immigrant visitor (albeit overstayed) to a permanent resident, based on his mother's becoming a naturalized citizen in August 1996. However, Brown could not have met the criteria to obtain such a change of status to preclude deportation. The procedure by which a nonimmigrant visitor may adjust his status to that of a person admitted to permanent residency is provided for under 8 U.S.C. § 1255, which provides as follows:

> The status of an alien who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is *eligible to receive an immigrant visa and is admissible to the United States for permanent residence,* and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a) (emphasis added).

An alien seeking an adjustment of status under § 1255(a) and who qualifies as an "immediate relative" of a United States citizen, as defined under 8 U.S.C. § 1151(b)(2)(A)(i) is not subject to numerical limitations placed against other aliens seeking adjustment of status. 8 U.S.C. § 1151(b). Rather, the alien is given preference with regard to the issuance of an immigrant visa or adjustment of status to an alien lawfully admitted into the United States for permanent residence, with such relief made available to the alien based on the date the alien's immediate relative was naturalized as a United States citizen, in accordance with a schedule issued by the Department of State. *Id.*

In the instant case, the relevant State Department schedule demonstrates that no immigrant visa would have been immediately available to Brown in February 1998, when his application for a change in status presumably would have been filed upon the advice of an IJ at a deportation

hearing, unless Brown had applied for such visa in May 1996. *Loiselle Affidavit,* ¶ 10 and Exhibit B. Specifically, State Department schedules in effect in February 1998 demonstrates that adjustment of status applications then being processed for aliens based upon family preference were filed *not later than May 16, 1996.* Government's Response at 12; *Loiselle Affidavit,* ¶ 10 and Exhibit B. As Brown's mother did not become a naturalized citizen *until August 30, 1996,* Brown could not have, and did not, apply for a status adjustment before that date, and, thus, it was factually impossible for an immigrant visa to have been immediately available to Brown in February 1998.

Insofar as Brown maintains that he could have filed, in February 1998, an application for a change in status based on his mother's obtaining permanent residency status in the United States in 1989, thereby making an immigrant visa immediately available to him, the court notes that Brown relies on 8 U.S.C. § 1182(c) in support. Defendant's Memorandum in Further Support of Suppression at 11–18. However, such reliance is inapposite for two reasons. First, the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996), repealed 8 U.S.C. § 1182(c), two years before Brown's deportation. In any event, § 1182(c) did not not apply to an alien who had been convicted of one or more aggravated felonies and had served for such felony or felonies a term of imprisonment of at least five years. *Rabiu v. I.N.S.,* 41 F.3d 879, 883 (2d Cir.1994). As such, the court need not further consider Brown's contention.

▮▮▮ Moreover, even if it were plausible, as Brown supposes, Defendant's Memorandum in Further Support of Suppression at 11–36, Hoffman Reply Affidavit, ¶¶ 5–13, that had counsel been made available, the charges rebutted, the expedited administrative deportation proceedings converted into general deportation proceedings pursuant to 8 U.S.C. § 1229a, which would have entitled Brown to a hearing before an IJ, and such hearing could have been sufficiently delayed, *i.e.,* approximately 21 months, while a petition for status adjustment was prepared on Brown's behalf, Brown still would not have been eligible for a change in status as no immigrant visa would have been immediately available to Brown given the fact of his conviction of an aggravated felony in February 1998. Specifically, 8 U.S.C. § 1182 delineates classes of aliens who are ineligible to receive visas and are ineligible to be admitted to the United States. 8 U.S.C. § 1182(a). One such class includes aliens who have been convicted of one or more crime involving moral turpitude. 8 U.S.C. § 1182(a)(2)(A)(i)(I). The parties do not dispute that the crimes of which Brown was convicted in Virginia in 1990, *i.e.,* robbery, use of a firearm, and abduction, constitute crimes involving moral turpitude. Additionally, "crimes of moral turpitude," as that term relates to the class of deportable aliens on that ground, "is not defined anywhere in the INA and [ ] the INA's legislative history sheds no light on Congress's intent." *Michel v. I.N.S.,* 206 F.3d 253, 263 (2d Cir.2000) (citing *Cabral v. I.N.S.,* 15 F.3d 193, 194–95 (1st Cir. 1994)). Nevertheless, the Second Circuit has held that "corrupt scienter is the touchstone of moral turpitude." *Michel, supra,* at 263. "Among the tests to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or a corrupt mind." *Hamdan v. INS,* 98 F.3d 183, 186 (5th Cir.1996). Under this standard, Brown's 1990 Virginia conviction of robbery, use of a firearm and abduction easily qualify as crimes involving moral turpitude.

In particular, Brown was convicted of robbery in violation of Virginia Code ("VA.CODE") § 18.2–58 (Michie 2000),[6] use of a firearm in violation of VA.CODE § 18.2–53.1, and abduction in violation of VA.CODE

---

6. *Unless otherwise indicated, references to* VA.CODE *are to Michie 2000.*

§ 18.2–47. These statutes describe crimes which may fairly be considered crimes of moral turpitude in accordance with the *Hamdan* test. The crime of robbery under Va.Code § 18.2–58 is committed when a person robs another through use of violence or fear of serious bodily harm, or by threat of presenting firearms or other deadly weapon or instrument. A use of firearm crime under Va.Code § 18.2–53.1 is committed when a person uses, threatens to use or displays of a firearm while committing or attempting to commit a felony. The crime of abduction under Va. Code 18.2–47 occurs when a person, "by force, intimidation or deception and without legal justification or excuse, seizes, takes, transports, detains or secretes the person of another with intent to deprive such other person of his person liberty or to withhold or conceal him from any person, authority or institution lawfully entitled to his charge." A plain reading of these statutes demonstrates they describe crimes of violence involving "corrupt scienter" and are "accompanied by a vicious motive or a corrupt mind." These crimes are, therefore, crimes of moral turpitude. As such, Brown's Virginia conviction of these crime involving moral turpitude rendered him, upon his conviction in 1990, ineligible for a visa or admissibility into the United States. 8 U.S.C. § 1182(a)(2)(A)(i)(I). ·

■ Nor was Brown entitled to discretionary relief from the grounds for inadmissibility under 8 U.S.C. § 1182(h). As relevant to the instant case, under § 1182(h), the Attorney General may, in her discretion, waive the application of the grounds of inadmissibility to an "immigrant" for who satisfactorily establishes that "denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son or daughter or such alien." 8 U.S.C. § 1182(h)(1)(B). As applicable to Brown, an "immigrant" is defined as an alien who other than one "having a residence in a foreign country which he has no intention

of abandoning and who is visiting the United States temporarily for business or temporarily for pleasure." 8 U.S.C. § 1101(a)(15). The Government contends that waiver of inadmissibility pursuant to 8 U.S.C. § 1182(h) is not available to Brown whose assigned status upon entering this country was "non-immigrant visitor." Government's Response at 14–15.

Here, the court observes that despite Brown's assigned status upon entering the United States in 1982 at age nine, accompanied by his mother and siblings, was "non-immigrant visitor," Brown remained in this country where he attended school and presumably resided with his family until his incarceration upon his 1990 Virginia conviction. This conduct begs the question whether Brown ever intended to return to a Canadian residence, such that Brown could properly be considered an immigrant for purposes of eligibility for a waiver of inadmissibility under 8 U.S.C. § 1182(h). The court need reach this issue, however, only if Brown also establishes "that denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son or daughter or such alien." 8 U.S.C. § 1182(h)(1)(B).

In particular, in this case, before the Attorney General could grant a waiver of inadmissibility pursuant to 8 U.S.C. § 1182(h)(1)(B), Brown would also have to show that denial of admission would result in extreme hardship to his mother, Jacqueline Collington, who was naturalized on August 30, 1996. Here, Brown has submitted nothing as evidence to support even an inference of such hardship. Loiselle Affidavit, ¶ 9. That Brown was incarcerated at age 17 based on his 1990 conviction in Virginia on the state felony charges, and remained incarcerated until he was deported on March 18, 1998, make it unlikely that Brown could have established that denial of his request for an adjustment of his status would have resulted in extreme hardship to his mother. As Brown has failed to establish that the denial of admis-

sion would result in extreme hardship to his mother, he is ineligible for a waiver of inadmissibility under 8 U.S.C. § 1182(h)(1)(B) regardless of whether Brown, for purposes of that statute, qualified as an immigrant.

Furthermore, insofar as Brown maintains that in *Michel, supra,* the Board of Immigration Appeals ("the BIA"), held that 8 U.S.C. § 1255 adjustment of status provisions are not statutorily barred for aggravated felons, but, rather, are within the discretion of the Attorney General, a careful reading of that case demonstrates otherwise. In particular, the alien in *Michel, supra,* was challenging the BIA's affirmance of his deportation based on his two convictions for criminal possession of stolen property in the fifth degree in violation of New York Penal Law ("N.Y.PENAL LAW") § 165.40, which is a class A misdemeanor, N.Y.PENAL LAW § 165.40 (McKinney 1998),[7] and is punishable by a definite term of imprisonment not to exceed one year. N.Y.PENAL LAW § 70.15(a). The alien in *Michel, supra,* was, thus, not an aggravated felon but, rather, a misdemeanant and, accordingly, the issue of whether aggravated felons were statutorily barred from obtaining an adjustment of status under 8 U.S.C. § 1255 was not before the court. *See Michel, supra,* at 257 n. 3 (holding it was not necessary to address merits of INS's alternative argument that alien was otherwise deportable based on his status as an aggravated felon). Accordingly, as an aggravated felon unable to obtain a waiver pursuant to ·8 U.S.C. § 1182(h), Brown was an inadmissible alien and, therefore, ineligible for any adjustment of status under 8 U.S.C. § 1255.

Brown has thus failed to demonstrate that but for the alleged procedural defects in his expedited administrative removal proceedings, had he been able to seek either a judicial or administrative appeal, he would not have been deported. Accordingly, Brown has failed to establish the requisite prejudice necessary to suppress use of his March 18, 1998 deportation to establish that element of the current charged violation of 8 U.S.C. § 1326(a). Brown's contention that his waiver of an IJ hearing was ineffective because such request was futile is, therefore, also without merit as, indeed, the advice given by the agents was in fact correct.

As Brown has not shown that defects in the deportation proceeding effectively deprived him of his right to directly appeal that determination, Brown is precluded from collaterally attacking the validity of his deportation in the current proceedings. Moreover, event if Brown were permitted to raise such an attack, it could not succeed because Brown is unable to demonstrate the degree of prejudice required to prevail on such a claim. As such, Brown's 1998 deportation order constitutes a valid basis for the present prosecution, and may be used as conclusive evidence of the deportation element of the charged 8 U.S.C. § 1326(a) violation under Count I. *Paredes–Batista, supra,* at 379. Even if the agents failed, as Brown contends, to strictly comply with all of the procedural requirements applicable to his deportation, Brown has not requested an evidentiary hearing on the issue and the findings herein render one unnecessary.

## *CONCLUSION*

Based on the foregoing, Defendant's motion to suppress (Docket Item No. 9) should be DENIED.

September 1, 2000.

---

**7.** Unless otherwise indicated, references to N.Y.PENAL LAW are to McKinney 1998.